# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| NAROSMI AUGUSTE, <br> Plaintiff <br><br> v. <br><br> CHAD WOLF, Acting Secretary <br> United States, Department of <br> Homeland Security, Transportation <br> Security Administration <br> Defendant | Civil Action No. 20-cv- 10720 <br><br><br><br> **COMPLAINT** <br> **AND JURY DEMAND** |

## INTRODUCTION

This is an action to seek damages and redress for the unlawful discrimination against the plaintiff on the basis of her disability and handicap which resulted in the plaintiff's termination from her position as security officer for the Transportation Security Administration ("TSA"). Plaintiff also seeks damages as the result of TSA failure to provide reasonable accommodation that would have allowed Plaintiff to continue to work.

TSA, its managers, agents and employees unlawfully retaliated against Plaintiff for filing discrimination claims against TSA. The Rehabilitation Act of 1973 ("Rehab Act") and the Americans with Disabilities Act ("ADA") expressly prohibit discrimination in employment on the basis of disability. *See* 29 U.S.C. s. 701, *et.seq.*. and under section 501, 504, 29 U.S.C. s. 794; in particular, as well as under 42 U.S.C. s. 12101, *et. seq.* The Rehab Act includes executive agencies which the Department of Homeland Security and TSA are one. The Rehab Act states federal employers cannot discriminate against employees because they have disabilities. The TSA failed to accommodate plaintiff's disability which included physical and

1

mental conditions including narcolepsy , hypersomnia, anxiety disorder and panic attacks . The TSA unlawfully terminated the plaintiff based on her disability under the pretext of discipline for conduct which basis was the disability itself. TSA also retaliated against the Plaintiff as a result of her filing of complaints pursuant to the plaintiff's protected right to do so , retaliation including termination of Plaintiff employment as well as prior harassment and hostile work environment all of which is unlawful, as well as denying Plaintiff promotion and employment opportunity. *See* ADA , 42 U.S.C. s. 12203 ; Title VII of Civil Rights Act of 1964, 42 U.S.Cs.2000e, *et. seq.* ; 42 U.S.C. 1981 The plaintiff has exhausted all administrative remedies required under federal law .

## PARTIES

1. The Plaintiff , Narosmi Auguste , is an adult natural person with a last and usual residence in Everett, Massachusetts , resident of the United States, who was employed by TSA as a level SV-1802, E-Band  transportation  security officer ("TSO") at General Edward Lawrence Logan International Airport, Boston , Massachusetts.  At all times relevant to this Complaint, Plaintiff had disabilities recognized under the Rehabilitation Act and ADA.

2. Defendant Chad Wolf is the Acting Secretary of  the United States Department of Homeland Security . He is sued in his official capacity. The Defendant TSA is an executive agency of the Department of Homeland Security of the United States government. The Defendants are employers as defined pursuant to federal legislation.

## JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 28 U.S.C. s. 1331 , and 28 U.S.C. s. 1343 , and  the regulations governing federal employees, 29 C.F.R. s. 1614.407 . Federal

question and subject matter are invoked in this matter under 42 U.S.C. s. 12112 and 42 U.S.C. s. 12203, and 42 U.S.C. s. 2000-e. . This Court has subject jurisdiction Plaintiff having exhausted all administrative remedies. This Court may assert jurisdiction over Defendant Wolf as Acting Secretary of the Department of Homeland Security which is located in Washington , D.C.

4. On January 23, 2014 Plaintiff timely contacted Equal Employment Opportunity Commission ("EEOC") officer pursuant to federal legislation and 29 C.F.R. s. 1614.105(a)(1) . On January 7, 2015 Plaintiff timely filed complaint with the employer TSA and EEOC pursuant to 29 C.F.R. s. 1614 . On September 17, 2018 EEOC Administrative Law Judge rendered a decision without hearing and remanded the matter back to the federal agency for issuance of a final agency decision without a hearing pursuant to 29 C.F.R. 1614.109(g)(3) . On October 29 , 2018 TSA Director of Office of Federal Operations rendered a final order. On January 15, 2020 EEOC Office of Federal Operations issued notice of Complainant's right to file a civil suit in federal district court pursuant to C.F.R. s. 1614.107(a)(3) having affirmed the Agency TSA final order adopting the Administrative Judge decision . Plaintiff timely filed her Complaint April 13, 2020.

5. Venue is proper pursuant to 28 U.S.C. s. 1391 , as the events giving rise to all claims occurred in the District of Massachusetts, and 42 U.S.C. s. 2000e-5(f).

## FACTS

6. Plaintiff was hired by TSA in or around January 2009 as Transportation Security Officer (TSO) at Boston Logan International Airport.

7. Plaintiff applied for a promotion in 2012 as a Behavioral Detection Officer (BDO) which she was well qualified for. However her promotion was denied on the basis of her symptoms of her medical sleep condition (narcolepsy and hypersomnia) which is a

3

medically recognized disability which condition results in an inability to experience restful sleep unlike normal individuals leading to chronic waking up issues and consequent tardiness. . This is a serious and significant disability which interferes in Plaintiff's major life activities including work , socializing and other activities. Plaintiff provided TSA with medical documentation of her disability. Plaintiff had previously filed an EEO discrimination complaint in 2012 on the basis of racial bias . Subsequently TSA denied Plaintiff a promotion to BDO despite the fact she was eminently qualified on the basis of Plaintiff's prior EEC racial discrimination complaint as well as her ongoing disability.

8. The Plaintiff EEO complaint(s) were placed and remained in her employee file all of which remained accessible and available to all TSA management .

9. By October 2012 Plaintiff's medical condition worsened causing acute difficulties with waking up for her shift which shift commenced around 3 a.m. resulting in tardiness . Exhaustion and ongoing fatigue ensued resulting in Plaintiff having to use sick time . Plaintiff made TSA aware of her ongoing heightened medical condition(s) and disability.

10. As a result Plaintiff requested reasonable accommodation in or around March 14, 2013 as a in discussion with her TSA Deputy Assistant Federal Security Director ("DAFSD") Karen Hegner ("Hegner") . Plaintiff confirmed to Hegner that modifying her work schedule to the overnight shift would permit the Plaintiff to cope with her sleep condition in order to avoid the significant barriers of waking up for the present shift. Plaintiff indicated this would also assist in addressing Plaintiff other symptoms of exhaustion and fatigue , all part of her medical condition including her sleep disorder, depression, anxiety and panic attacks. The modification to the night shift was recommended by her medical treatment team.

11. Instead of entering into a reasonable interplay to attempt to accommodate the Plaintiff , TSA and Hegner were dismissive than and throughout Plaintiff's employment failing to address or recognize the seriousness of Plaintiff medical condition and handicap. Plaintiff's reasonable request for accommodation by shift modification was denied by TSA DAFSD Hegner with a one word response -"No". No explanation nor reason was offered

4

then or at any time thereafter. No further meeting was suggested nor any further discussion by TSA.

12. Instead TSA Hegner replied on April 4, 2013 in the form of a two (2) day suspension on the pretextual basis of the Plaintiff's tardiness and one day absence from work, all of which Hegner was made aware of was the result of the Plaintiff's disability .The suspension came within three (3) weeks of the Plaintiff requesting reasonable accommodation. This was the TSA response to Plaintiff request for accommodation.

13. TSA Hegner claimed subsequently that she offered Plaintiff the evening shift (not the night shift) which Hegner was well aware did not conform to the Plaintiff's medical recommendation which was to change Plaintiff's to the overnight shift in order to accommodate to Plaintiff sleeping pattern as confirmed by clinical testing . No interactive accommodation process was proposed by TSA despite Plaintiff further and ongoing requests.

14. Subsequently TSA Hegner claimed that the modification to a night shift for the Plaintiff would in effect be an "undue hardship" vaguely referring to a "bidding" system and special training all of which the Plaintiff indicated she would be willing to do.  Plaintiff indicated that there is no significant "re-training" and that there are five (5) employees on the night shift which employees tend to rotate in any event and would have likely provided for an opening thus providing Plaintiff with a reasonable accommodation . This negates TSA claim of undue hardship and in fact underlines and supports Plaintiff position of the pretextual nature of TSA refusal to accommodate.

15.  Plaintiff made TSA aware on an ongoing basis through its managers, supervisors and other employees that she was suffering from a sleeping condition which represented a significant disability.  This was communicated through various emails and ongoing discussions.

16. TSA ignored Plaintiff's ongoing request to accommodate completely. By May, 2013 Plaintiff renewed the same request for reasonable accommodation to the night shift , this time emailing Assistant Federal Security Director ("AFSD") Robert Snyder who replied

that he would address this with DAFSD Hegner.

17. AFSD Snyder nor anyone from TSA ever replied or got back to the Plaintiff regarding her ongoing accommodation request.

18. Instead of a meaningful reply or any reply Plaintiff was met with retaliatory and demeaning groundless accusations under the cover of formal bureaucratic process creating a hostile work environment and harassment.

19. In or about October 26, 2013 five (5) months after emailing the TSA Director Plaintiff surprisingly received a poor job performance rating from management. In or about January 16, 2014, less than three (3) months later Plaintiff was served a "Notice of Proposed Removal" based on Plaintiff's tardiness despite being advised of Plaintiff disability throughout the previous year on an ongoing basis through meetings and emails with TSA requesting reasonable accommodation based on precisely this issue. Now TSA, as a pretext, TSA cited other extraneous non-significant issues such as supposedly improper receipt of a CD at her station from a music artist which occurred in or around August, 2013 being two (2) months _prior_ to her performance rating which made no reference to this incident. Yet this issue suddenly appeared in a Notice of Proposed Removal. This Notice is a required formal step for ultimate removal and termination . Of note is that nowhere in this Notice is there any reference to government wide, including TSA, ethics rules permitting gifts valued under $20.00. This Notice further referenced an infraction so minor that other TSA officers were never disciplined for this ("fail to follow SOP"). Clearly a pretext for termination.

20. In or around February 6, 2014 Plaintiff provided a complete answer orally to TSA and again repeated the fact of her ongoing disability and request for accommodation, again to no avail.

21. On March 6, 2014 Director Snyder finally replied to Plaintiff's ongoing and numerous requests, but in the form of a Termination of Employment ("Decision on the Notice of Proposed Removal").

22. Coincidentally , or perhaps intentionally with forethought and malice , TSA finally provided Plaintiff her initial EEO interview four (4) days after her termination.

6

23. Following the abovenoted events and Plaintiff's termination based on discrimination for her disability not surprisingly her conditions worsened, physically and mentally. She became more withdrawn, depressed, anxious, isolated and humiliated. Panic attacks quickened, increased and lasted longer. Plaintiff's social life and life across the board became significantly worse, and she suffered ongoing and significant financial hardship.

## COUNT I- UNLAWFUL DISCRIMINATION AND FAILURE TO ACCOMMODATE IN VIOLATION OF THE REHABILITATION ACT (29 U.S.C. S. 794), THE AMERICANS WITH DISABILITIES ACT (42. U.S.C. s. 12112 ); 42 U.S.C. 1981

24. The foregoing paragraphs 1-23 are realleged and incorporated by reference herein.

25. Section 504 of the Rehabilitation Act, 29 U.S.C. s. 794 provides that no otherwise qualified individual solely by reason of her disability shall be subjected to discrimination under any program conducted by Executive agency. TSA is an Executive agency.

26. TSA discriminated against the plaintiff by failing to reasonably accommodate the plaintiff's disability in violation of The Rehab Act of 1973, 29 U.S.C. s. 701 *et. seq.*, as amended.

27. TSA is prohibited from discriminating against any qualified employee who has a disability as defined by the ADA, 42 U.S.C. s. 12101, *et. seq*. The ADA prohibits employers from discriminating against qualified individuals with a disability in regard to discharging and "other terms, conditions and privileges of employment". 42 U.S.C. s. 12112.

28. The Plaintiff qualifies as a disabled person in that she has a physical and mental impairment which interfered with a major life activities and/or major bodily functions, having been diagnosed with narcopsy, hypersomnia, anxiety disorder and panic attacks all of which resulted in medical impairment(s). The Plaintiff is and was at all pertinent times hereto, a qualified individual with a disability within the meaning of 42 U.S.C. s. 12111(8)

7

and able to perform the essential functions of her job.

29. TSA terminated, disqualified and disciplined the plaintiff because of her handicaps and resulting impairments. Plaintiff was qualified to perform her job functions on an alternate job shift. TSA made no attempt at individualized assessment regarding plaintiff's disability and reasonably accommodating plaintiff by switching her to an alternate night shift. Plaintiff on multiple occasions consistently requested TSA for a shift change as a reasonable accommodation. TSA through its authorized managers, employees and/or agents, not only failed to reasonably attempt this accommodation but failed to even respond or acknowledge plaintiff's request thereby failing to engage in the reasonable required interactive accommodation process.. TSA conducted itself willfully and in callous disregard of the rights of the Plaintiff.

30. On March 6, 2014 the TSA terminated the plaintiff's employment in violation of 42 U.S.C. s. 12112(a). TSA terminated on the pretext of her poor job performance when in fact this was a pretext, the actual reason being the plaintiff's disability which the TSA failed to address at any time despite the fact that were aware of her disability which TSA could have and should have addressed with reasonable accommodation. Specifically TSA failed and refused to switch plaintiff's working shifts to night time to accommodate her disabilities which would not have been an undue hardship for TSA employment operations within the meaning of s. 12112(b)(5)(A). TSA failure to properly or address the Plaintiff's disability at all resulted in multiple discipline issues including accusations of Plaintiff being "sleepy" on the job, lack of concentration and lateness and poor performance evaluations, all of which were and are manifestations of the plaintiff's disability. TSA aforementioned illegal discrimination against the plaintiff come within the meaning of s. 12112(b)(3)(A).

31. TSA further committed unlawful discriminatory acts by pretextual disciplinary actions and poor performance ratings (See paragraph 19, 21 above) which actions all emanated from TSA failure to address the Plaintiff's disability under the pretext of overall unacceptable job performance, almost all of which were the direct result of the

8

Plaintiff's disabilities which TSA was aware of at all relevant times but failed and refused to accommodate .

32.    TSA violated section 504 of the Rehabilitation Act, 29 U.S.C. s. 794, by disciplining the plaintiff on multiple occasions because of her actual disability, her perceived disability, or her record of impairment. The TSA further violated the Act by terminating the plaintiff's employment on the actual basis of her disability thereby committing discrimination against a disabled person.

33.    As a result of the TSA actions plaintiff has suffered damages both economic and non-economic, including but not limited to loss of past and future wages and benefits, loss of professional opportunities, emotional distress, mental pain and anguish.

34.    Plaintiff is entitled to her attorney's fees and costs incurred in this matter pursuant to 29 U.S.C. s. 794(a) and 42 U.S.C. s. 12205 . Plaintiff is further entitled to any and all relief permitted under ADA, 42 U.S.C. s. 12117(a), including equitable relief. 42 U.S.C. 1981.

**COUNT II- UNLAWFUL RETALIATION AND HOSTILE WORKING ENVIRONMENT IN VIOLATION OF THE AMERICANS WITH DISABILITES ACT (42 U.S.C. s. 12203), AND TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 (42 U.S.C. s. 2000e et. seq.) , AND THE REHABILITATION ACT (29 U.S.C. 701); AND 42 U.S.C. 1981**

35.    The foregoing paragraphs 1-34 are realleged and incorporated by reference herein.

36.    In 2012 the Plaintiff filed a Complaint against TSA for racial discrimination. In response to this protected right TSA , its authorized managers, employees and/or agents , unlawfully subjected the Plaintiff to a hostile and abusive work environment, culminating in a rejection of Plaintiff application for promotion thereby depriving Plaintiff of an employment opportunity, said retaliation in violation of Title VII Civil Rights Act of 1964 and 42 U.S.C. 1981 .

37.    Subsequently in response and in retaliation to the Plaintiff's protected right

to request a reasonable accommodation for her disability TSA through its authorized managers, employees and/or agents, has took one of more adverse employment actions against Plaintiff in the form of discipline, poor work evaluations and ultimately termination of employment. TSA illegal retaliation included unjustly subjecting her to unjust scrutiny, false allegations of misconduct and unwelcome and derisive comments solely because of her request to address her disability. Each of these acts are in violation of Rehab Act and ADA.

38.    The Plaintiff continued to suffer harassment directly from TSA and other employees which TSA permitted to continue. TSA officials refused to take steps to mitigate the harassment and create a safe and lawful working environment, including failing to take steps to punish individual unlawful conduct, or to require those individuals to attend EEO or sensitivity training. The TSA harassing conduct and lack of response constitutes a discriminatory hostile work environment n violation of 42 U.S.C. s. 2000e *et seq.*.

39.    The Defendants conduct as alleged above constitutes hostile and abusive working environment in violation of Title VII, Rehab. Act and ADA. The stated reasons for the Defendant's conduct were not the true reasons, but instead were pretext to hide the Defendant's discriminatory animus and predominant intent. Through TSA own actions and the actions of its managers, employees, agents and/or representatives TSA acted intentionally, maliciously, oppressively, and with willful, callous, wanton and reckless disregard for the Plaintiff's rights.

40.    As a result of the TSA actions Plaintiff has suffered and continues to suffer and will suffer pain, humiliation and emotional and mental distress resulting in compensatory damages including loss of earnings and other employment benefits and job opportunities. Plaintiff is thereby entitled to general and compensatory damages to be proven at trial, as well as punitive and exemplary damages in addition to reasonable attorney fees and costs.

WHEREFORE the Plaintiff prays for the following legal and equitable relief from this Honorable Court:

1. That judgment be entered in her favor on Counts I and Count II of the Complaint for all requested compensatory and consequential damages including emotional ,distress, mental anguish, suffering, humiliation, inconvenience past loss of enjoyment of life and future medical expenses ;

2. Back pay and front pay to be determined at trial and/or impairment of ability to earn money;

3. Actual damages;

4. That punitive and liquidated damages be assessed against Defendant as allowed for under 42 U.S.C. s. 12117 and 42 U.S.C. 1981;

5. That Defendant be ordered to remove any and all references to retaliatory actions taken against Plaintiff including termination for cause and any disciplinary record(s);

6. For costs and reasonable attorney fees;

7. For pre and post judgment interest at the highest lawful rate ;

8. For all other relief this Honorable Court may deem fair and just.

**THE PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS OF HER COMPLAINT.**

Respectfully Submitted,

NAROSMI AUSUSTE
By Her Attorney,
" /s/ Steven R. Yormak"

---

Steven R. Yormak, Esq. BBO # 568516
Yormak Disability & Employment Law Center
550 Cochituate Road, Suite 25, East Wing
Framingham, Massachusetts  01701
Tel: (508) 745-8242
Fax: (781) 237-0637
yormaklaw@aol.com

Dated: April 13, 2020